UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROSALBA VARGAS-ORTIZ,

Plaintiff,

v.

John MCCARTHY, Boise Field Office Director of United States Citizenship and Immigration Services; KRISTI BARROWS, District Director of the United States Citizenship and Immigration Services; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants.

Case No. 1:14-cv-00393-CWD

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

The Court is presented with two motions: Defendants' Motion to Dismiss, which relies upon the factual assertions contained in the Declaration of C. Steve Gossett, and Plaintiff's Motion to Exclude the Declaration of C. Steve Gossett. Having thoroughly considered the parties' briefs and the record, and finding that oral argument would not aid

the Court in resolving the issues presented by the motions, the Court will decide the motions on the record before it. Dist. Idaho L. Rule 7.1.[1]

## BACKGROUND[2]

Plaintiff Rosalba Vargas-Ortiz (formerly Rosalva Vargas-Ambriz) has resided lawfully in the United States for over twenty years. She was born on February 16, 1965, in Michoacán, Mexico, and currently resides in Glenns Ferry, Idaho. She has four children who are citizens of the United States.

Plaintiff possesses three genuine documents bearing her photograph and fingerprints, issued by Defendant USCIS. The first document Plaintiff obtained was a lawful temporary resident card issued upon her application for temporary residency under the Immigration Reform and Control Act of 1986, shortly after Plaintiff began working as a fruit farmworker in Sanger, California.[3] The card issued, however, bore the name "Maria Rosalva Vargas," and the date of birth of "02/03/1965." Upon bringing this to the attention of the United States Customs and Immigration Service,[4] Plaintiff was informed the errors were not a problem because the alien number, photograph, and fingerprints associated with the card were accurate. Plaintiff used the card for work, travel, and identification purposes until 1992.

---

[1] All parties appearing have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 11.)

[2] Unless otherwise noted, all facts are taken from the First Amended Complaint (Dkt. 15), and are accepted as true under Fed. R. Civ. P. 12(b)(6).

[3] Plaintiff's amended complaint does not indicate when she arrived in California. According to Defendants, Plaintiff recalled during a recorded interview that she entered the United States on April 13, 1983, by crossing the Mexico-U.S. border on foot near Tijuana, Mexico. Gossett Decl. ¶ 17 (Dkt. 21-2.) During that same interview, Plaintiff indicated she applied for temporary residence under the Special Agricultural Workers Program by filling a "yellow form with 2 pages" in "1985 or 1986." *Id.* ¶21.

[4] Plaintiff does not indicate how soon after issuance of the card she brought the errors to USCIS attention. Her complaint simply indicates that she "immediately informed Defendant USCIS of the errors on her temporary residence card." Am. Compl. ¶ 44 (Dkt. 15.)

Plaintiff asserts that she was never subjected to any proceedings to terminate her lawful resident status under 8 U.S.C. § 1160, and therefore she was entitled to receive a lawful permanent resident card upon renewal of her alien status.

In 1992, Plaintiff visited Defendants' offices in Boise, Idaho, to renew her expiring lawful temporary card. She wrote her correct name and date of birth. Plaintiff was issued a permanent resident alien card, again with an incorrect name and date of birth. This time, the name on the permanent resident alien card read: "Maria Guadalupe Bueno de Vargas," with a date of birth of "02/03/1965." Plaintiff attempted in person to correct the errors, and was again informed the inaccuracies were not an issue because the card bore her photograph, her fingerprints, and her unique alien number.

After using the card for ten years, in 2002, Plaintiff visited the Boise USCIS office to renew her expiring permanent resident alien card. Plaintiff attempted again to correct the name on the card. Defendants gave her instead a temporary lawful permanent resident alien card with the name "Maria Vargas" and the date of birth "03/02/1965."

According to Plaintiff, each of the permanent resident alien cards Defendant USCIS issued to Plaintiff contained her photograph and fingerprints, and contained the same alien number: 090-422-457.

When Plaintiff did not receive her new permanent card in the mail, she filed on May 20, 2008, a Form I-90, Application to Replace Permanent Resident Card, seeking a replacement card due to the errors on the prior card. She provided her name, "Rosalva Vargas-Ambriz," and date of birth, "02/03/1965." Accompanying her application was her affidavit explaining the discrepancy in her name and birthdate due to the Defendants'

maintenance of the incorrect records for her. Plaintiff included also copies of each of the cards Defendants had issued Plaintiff, as well as copies of her social security card, birth certificate, and Mexican identification card.

When Defendants failed to adjudicate the I-90 application, Plaintiff requested a meeting, which occurred with Defendant Gossett on February 10, 2009. Defendant Gossett stated that USCIS believed "Plaintiff was a lawful permanent resident and did not suspect she had committed any fraud." Defendant Conway then "issued the Plaintiff a temporary card and said, through his agent, that he would follow up with the Plaintiff." Am. Compl. ¶ 66 (Dkt. 15.)

On May 11, 2009, Defendant Gossett informed Plaintiff she would be required to appear before an Immigration Judge. However, no notice to appear was received. On October 19, 2009, Defendants denied Plaintiff's I-90 application and, despite having issued Plaintiff multiple permanent resident cards, asserted there was no evidence of Plaintiff's permanent residence. Instead, Defendants issued Plaintiff a new alien number: 089-926-962. Also on October 19, 2009, Defendants issued a notice charging Plaintiff as removable from the United States. On November 4, 2010, Plaintiff's removal hearing was terminated.

On March 7, 2013, Plaintiff again filed a Form I-90, and again submitted copies of the prior permanent resident cards Defendant USCIS had issued to her. On September 24, 2013, Defendants denied the I-90 application, stated there was no evidence Plaintiff was, or ever had been, a permanent resident alien of the United States, but that there was no evidence of malice on the part of the Plaintiff.

On October 24, 2013, Plaintiff submitted a timely motion to reconsider with Defendant USCIS, which motion was denied. Plaintiff asserts that Defendants' errors, and the resulting failure to issue her proof of lawful resident status, constitutes a violation of the Immigration and Nationality Act, the Administrative Procedures Act, and the United States Constitution. Plaintiff seeks an order requiring Defendants to issue a work authorization during the pendency of these proceedings; judgment declaring Defendants' failure to issue a permanent resident card to be arbitrary, capricious, and not in accordance with the law; and an order requiring Defendants to issue proof of lawful permanent resident alien status to her.

Defendants' motion to dismiss argues, based upon the declaration of Mr. Gossett, that Plaintiff's amended complaint should be dismissed because "there is no evidence she ever applied for or was granted permanent resident status." Defendants contend Plaintiff never applied for or was granted permanent resident status, because the alien number first given to her belonged to an individual named "Maria Guadalupe Bueno de Vargas," a naturalized citizen living in Miami, Florida. Defendants did not discover this error until May 20, 2008. Apparently, Defendants cannot find any applications under the name of Rosalva Vargas-Ambriz or other variations based upon the fingerprints of Plaintiff.

Defendants contest Plaintiff's recollection of her initial application in 1986, by providing Mr. Gossett's testimony that the application forms were white with a green stripe, whereas Plaintiff recalls a yellow application, and the Seasonal Agricultural Worker Program did not begin accepting applications until June 1, 1987, not in 1986, as Plaintiff remembers.

Based upon the information contained within Mr. Gossett's declaration, Defendants contend Plaintiff did not apply for permanent residence status as she claims she did, because Plaintiff's permanent resident status cannot be verified from official Department records. Defendants therefore contend Plaintiff's amended complaint does not state a claim for relief. But, Defendants do not explain how Plaintiff obtained the various immigration documents bearing her photograph and fingerprints, nor do they dispute the allegations in Plaintiff's complaint that she possessed such documents.

Procedurally, this matter is in its infancy. Plaintiff filed her complaint on September 17, 2014. Defendants served an answer on January 5, 2015. On January 26, 2015, Plaintiff moved to amend and correct her complaint, which was deemed filed on January 27, 2015, pursuant to Fed. R. Civ. P. 15(a)(1)(B). Defendants requested an extension of time to file a response to the amended complaint, which the Court granted. The Court conducted a telephonic scheduling conference on February 12, 2015, but did not set deadlines because Defendants indicated they would be filing a motion to dismiss. The telephonic scheduling conference was continued, and the parties were directed to meet and confer on a litigation plan. (Dkt. 20.) On February 23, 2015, Defendants filed their motion to dismiss. Briefing on the motion to dismiss, and the later motion to exclude the Gossett Declaration, concluded on May 4, 2015. (Dkt. 29.)

## ANALYSIS

### 1. Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are

construed in the light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994); Russell v. Landrieu, 621 F.2d 1037, 1039 (9th Cir.1980). "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). However, Rule 12 provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b)(6). Notwithstanding this rule, "a motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleadings happen to be filed with the court." *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 582 (9th Cir. 1983). A motion filed with extraneous materials is to be treated as a motion for summary judgment only if the court relies on the material. *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-44 (9th Cir. 2003). Conversion to summary judgment is at the discretion of the court and the court must take some affirmative action before conversion is effected. *Id*. at 1144.

**2. Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d

1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**3. Analysis**

Defendants, by filing the Declaration of C. Steve Gossett, seek to convert their Rule 12(b)(6) motion to a motion for summary judgment and ask the Court to grant the motion based upon Plaintiff’s failure to oppose their motion with evidence other than what was presented in Plaintiff’s amended complaint. At this early stage in the litigation,

there is no reason for the Court to adjudicate a summary judgment motion. Further, Plaintiffs were not directed by the Court to provide facts to oppose a summary judgment motion, and no discovery has been conducted. It would be improvident to grant the motion under these circumstances. Accordingly, the Court excludes the declaration of Mr. Gossett from consideration of the 12(b)(6) motion, and declines, as is within its discretion, to convert the motion to dismiss to a motion for summary judgment under Rule 56. *See Swedberg v. Marotzke*, 339 F.3d 1139, 1143-46 (9th Cir. 2003) (explaining the boundaries of the district court's discretion in excluding extraneous material presented with a Rule 12(b)(6) motion to dismiss).

In so excluding the declaration, the motion to dismiss does not challenge the sufficiency of the pleadings. Nor do Defendants argue that Plaintiff's allegations fail to state a claim absent reliance upon the Gossett declaration. Rather, by asking the Court to consider extrinsic evidence, Defendants challenge the factual assertions contained in the pleadings. Because the motion to dismiss does not challenge the legal sufficiency of the pleadings, the motion is denied.

Even were the Court to consider the Gossett Declaration, the two opposing factual scenarios cannot be reconciled as a matter of law at this time. Defendants do not refute that Defendants issued Plaintiff a lawful temporary resident card followed by not one, but by two permanent resident cards, and cannot address how or why Plaintiff obtained any of these cards. Plaintiff has enjoyed what she believed was lawful residency for over twenty years. Yet, despite being informed by Plaintiff of the errors on the cards, Defendants did not "discover" the errors until 2008, and cannot explain why or how

Plaintiff came into possession of the residency cards absent proof of any fraud on her part. Indeed, Defendants do not indicate there actually was any fraudulent intent on Plaintiff's part.

Despite evidence of the issuance of the cards, Defendants claim Plaintiff never applied for residency status, and do not explain what might have happened to her file. On the one hand, Plaintiff indicates she lawfully complied with the immigration laws, and applied for and received not one, but two permanent resident alien cards in addition to her initial temporary resident alien card. On the other hand, Defendants claim Plaintiff did not ever apply for residency status because they cannot find her file, and the alien number initially given to Plaintiff is now associated with a woman in Florida. The two stories directly contradict each other, and the Court is not in a position to resolve the factual conflict.

Neither party is prejudiced by the Court's ruling. The Court continued the telephonic scheduling conference in this matter pending the filing of Defendants' response to the amended complaint. In light of Defendants' premature filing of a summary judgment motion with an irreconcilable factual conundrum, the Court will reconvene the scheduling conference. This matter may benefit as well from early ADR given the nature of the proceedings.[5]

---

[5] Defendants suggested there may be an alternative method to adjust Plaintiff's alien status in the form of relief known as cancellation of removal pursuant to 8 U.S.C. § 1229b and 8 C.F.R. § 1240.20(a) and (b). There may also be another alternative. The Court suggests the parties consult the Court's decision in *Wang v. Chertoff*, No. CV 08-429-S-CWD, 676 F.Supp.2d 1086 (D. Idaho Mar. 23, 2009), wherein the Court considered a matter involving USCIS's mistake in adjudicating an alien's application for status adjustment, and found the delay in processing the application unreasonable.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion to Dismiss (Dkt. 21) is **DENIED**.

2) Plaintiff's Motion to Exclude Declaration of C. Steve Gossett (Dkt. 24) is **GRANTED**.

3) A notice of hearing setting a telephonic scheduling conference is forthcoming. The parties are to meet and confer on a joint litigation plan and be prepared to discuss ADR.

UNITED STATES COURTS DISTRICT OF IDAHO

Dated: **June 26, 2015**

Honorable Candy W. Dale
United States Magistrate Judge